UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Larry Eugene Wilson, Jr., <br><br> Petitioner, <br><br> v. <br><br> Tim Busby, Acting Warden, <br><br> Respondent. | Case No. 12cv415-AJB (BLM) <br><br> **REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** <br><br> [ECF No. 1] |

    This Report and Recommendation is submitted to United States District Court Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California. On February 15, 2012, Petitioner Larry Eugene Wilson, Jr., a state prisoner who is proceeding pro se and in forma pauperis, commenced these habeas corpus proceedings pursuant to 28 U.S.C. § 2254. ECF No. 1 ("Pet."). Petitioner challenges his conviction of four counts of forcible rape, one count of forcible sodomy, and one count of kidnapping for the purpose of rape[1]. Id. Respondent filed an Answer on May 22, 2012. ECF No. 13 ("Answer"). Petitioner filed a Traverse on November 30, 2012. ECF No. 23 ("Traverse").

    This Court has considered the Petition, Answer, Traverse, and all supporting documents filed by the parties. For the reasons set forth below, this Court **RECOMMENDS** that

---

[1] Kidnapping for the purpose of rape, as defined in California Penal Code Section 209(b), is commonly referred to as "aggravated kidnapping." See People v. Reed, 78 Cal.App.4th 274, 283 (2000).

1

Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the California Court of Appeal's opinion in <u>People v. Wilson</u>, Appeal No. D052986, (Cal. Ct. of App. Apr. 8, 2009):

> On July 10, 1999, victim Stacey W. and her friends went to Canes Bar and Grill in Mission Beach. While at Canes, Stacey socialized with her friends and drank alcohol.
>
> At about 1:45 a.m., Stacey escorted one of her friends out of Canes and into a taxi. As she walked back to the bar to find the rest of her friends, Stacey heard a man say "excuse me" or "Stacey" from inside a parked car. Realizing that she did not know the man, Stacey turned to walk away. As she walked away, the man grabbed Stacey and forced her into the passenger side of the car. Stacey identified Wilson as the man who grabbed her.
>
> Once Stacey was inside the car, Wilson punched her in the face and threatened to kill her. Wilson began driving and eventually stopped the car in a secluded parking lot. Wilson then pinned Stacey down, tore off her underwear and repeatedly penetrated her vagina and anus with his penis. Wilson then resumed driving, stopped the car in another parking lot and again repeatedly penetrated Stacey's vagina with his penis.
>
> After Wilson once again resumed driving, he told Stacey that he planned to kill her because she had seen his face. Stacey falsely responded that Wilson should not kill her because she had a two-year-old son at home who needed his mother. At that point, Wilson's demeanor changed, and he demanded that Stacey remove her jewelry. After Stacey complied with Wilson's demand, he pulled over to the side of the road, let Stacey out of the car and drove away. Stacey flagged down a passing limousine and told the driver she had been raped. The driver took Stacey to her apartment.
>
> When Stacey arrived at her apartment, her roommate called the police. An ambulance transported Stacey to Villa View Community Hospital where forensic nurse examiner Claire Nelli conducted a sexual assault examination. Nelli noted bruising on Stacey's leg and face. A vaginal examination revealed substantial abrasion, bruising, and other trauma. Nelli also collected physical evidence from Stacey's body.
>
> In 2002, the San Diego Police Department Crime Laboratory analyzed and extracted DNA evidence from vaginal swabs taken during Stacey's sexual assault examination. In 2006, the crime lab was informed of a match between Wilson, a subject in Kansas' DNA database, and the unknown DNA sample taken from Stacey's vaginal swab. A San Diego Police Department criminalist confirmed the match.
>
> Wilson was arrested and charged with four counts of forcible rape, one count of forcible sodomy, and one count of kidnapping for the purpose of rape. The charging information also alleged as to the forcible rape and forcible sodomy counts that Wilson kidnapped and substantially increased the risk of harm to Stacey. A jury convicted Wilson on all counts and found all special allegations true. The court sentenced Wilson to a total term of 58-years-to-life in prison.

Lodgment 5 at 2-3.[2]

Petitioner appealed his conviction, arguing that the admission of expert testimony that the victim's injuries were consistent with non-consensual sexual intercourse was reversible error. Lodgment 2. On April 8, 2009, the California Court of Appeals filed an opinion affirming the judgment of the trial court. Lodgment 5. Petitioner filed a petition for review in the California Supreme Court reasserting the same claim and the Court summarily denied the petition for review without citation of authority. Lodgments 6 and 7. On February 19, 2010, Petitioner mistakenly filed his initial state habeas petition in the California Court of Appeal, which denied the petition without prejudice and directed Petitioner to refile his petition in the San Diego County Superior Court. Lodgments 8 and 9. Petitioner then filed a petition in the San Diego County Superior Court arguing that the prosecution of his case was barred by the statute of limitations and both his trial and appellate counsel were ineffective. Lodgment 10. On June 3, 2010, the Superior Court denied the petition in a reasoned opinion.[3] Lodgment 11. On July 23, 2010, Petitioner filed a habeas petition in the California Court of Appeals asserting the same claims, which the appellate court denied in a reasoned opinion dated August 24, 2010. Lodgments 12 and 13. On August 1, 2011, Petitioner filed a habeas petition in the California Supreme Court, asserting the same three claims, as well as a violation on the grounds that the government had not proved beyond a reasonable doubt the required element of "intent to commit rape" as charged in Count 6. Lodgment 19. On December 14, 2011, the Court summarily denied the petition without citation of authority. Lodgment 20. Petitioner filed the instant Petition for Writ of Habeas Corpus on February 15, 2012. ECF No. 1.

---

[2] This Court presumes the state court's factual determinations to be correct absent clear and convincing evidence to the contrary. 28 U.S.C § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Parke v. Raley, 506 U.S. 20, 35 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).

[3] The Court stated that Petitioner's claims were procedurally barred because they were not raised on appeal. Lodgment 11. However, the Court went on to address the merits of each claim. Id.

## **SCOPE OF REVIEW**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West 2012).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2012). In making this determination, a court may consider a lower court's analysis. Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (authorizing a reviewing court to look through to the last reasoned state court decision). Summary denials are presumed to constitute adjudications on the merits unless "there is reason to think some other explanation for the state court's decision is more likely." Harrington v. Richter, 131 S.Ct. 770, 784-785 (2011).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413). "[A] federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Id. at 75-76 (citations and internal quotation marks omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

If the state court provided no explanation of its reasoning, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington, 131 S.Ct. at 786. In other words, a federal court may not grant habeas relief if any fairminded jurist could find the state court's ruling consistent with relevant Supreme Court precedent. Id.

Habeas relief also is available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2) (West 2012); Wood v. Allen, 130 S.Ct. 841, 845 (2010). A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were objectively unreasonable in light of the evidence presented in state court. See Miller-El, 537 U.S. at 340 (2003); see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable). This Court will presume that the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465, 473-474 (2007).

The exhaustion of available state judicial remedies is a prerequisite to a federal court's consideration of claims presented in habeas corpus proceedings. 28 U.S.C. § 2254(b); see Rose v. Lundy, 455 U.S. 509, 522 (1982); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). Exhaustion of a habeas petitioner's federal claims requires that they have been "fairly presented" in each appropriate state court, including a state supreme court with powers of discretionary review. Baldwin v. Reese, 541 U.S. 27, 29 (2004). However, claims are not exhausted by mere presentation to the state appellate system. A petitioner also must "alert[] [the state] court to the federal nature of the claim." Id. at 29. A petitioner may indicate a federal claim by citing the source of federal law upon which he relies, or by merely labeling the claim as "federal." Id. at 32.

## DISCUSSION

Petitioner presents four grounds for habeas relief. First, Petitioner claims that his right to  was violated because there was insufficient evidence to support the specific intent element of the aggravated kidnapping offense. Pet. at 11. Second, Petitioner argues that his prosecution on Counts 1-5 for forcible rape and forcible sodomy was in violation of the Ex Post Facto Clause. Id. at 19. Petitioner's third and fourth claims allege that both his trial and appellate counsel were constitutionally ineffective. Id. at 26-41.

### I. Insufficient Evidence for Aggravated Kidnapping

In Claim One, Petitioner argues that the trial court violated his constitutional rights because there was insufficient evidence to prove the required specific intent element of aggravated kidnapping. Pet. at 7-13. During his argument, Petitioner repeatedly focuses on the alleged inadequacy of the court's instruction to the jury, claiming that the trial court did not instruct the jury that in order to convict him of this crime, they had to find that he had the specific intent to rape when he committed the kidnapping crime. Id. However, in his conclusion, Petitioner states

> For clarity, this is not a claim of improper jury instruction by the trial court, to the contrary, it is Petitioner's contention that based on the evidence presented at trial, in accordance with the general rule on instructing the jury, the trial court properly instructed the jury because it too realized no substantial evidence was presented to the trier of fact as to the essential specific intent element of Count 6, of which, as the record reflects, the prosecution expressly concedes it had abandoned.

1  Id. at 12. As a result, it appears that Petitioner's first claim is premised on the allegation that
2  there was insufficient evidence to support the specific intent requirement of aggravated
3  kidnapping. Id. at 7-13. However, Petitioner's explanation is that when the trial court
4  realized there was no evidence of Petitioner's intent to rape, the trial court sua sponte
5  reduced the crime from aggravated kidnapping with intent to rape to simple kidnapping. Id.
6      Respondent counters that Petitioner was charged with and convicted of aggravated
7  kidnapping with intent to rape and neither the trial court nor the government changed the
8  charge. Answer at 14. Respondent also claims that there was overwhelming evidence
9  presented at trial to support the jury's determination that Petitioner had the requisite intent
10 for aggravated kidnapping with intent to rape and that Petitioner cannot show his
11 prosecution involved an "unreasonable application of, clearly established federal law as
12 determined by the United States Supreme Court." Id. at 18-20.
13     Petitioner did not present this claim to any court other than the California Supreme Court.
14 Lodgment 19. In his habeas petition to the California Supreme Court, Petitioner again stated
15 that he only was challenging the sufficiency of the evidence of the requisite specific intent;
16 he was not challenging the adequacy of the jury instructions. Id. at 13.[4] The petition was
17 summarily denied without a statement of reasoning or citation of authority. Lodgment 20.
18 A "silent denial," such as occurred here, constitutes a decision on the merits. Hunter v.
19 Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992). In such a situation, the reviewing federal
20 court must conduct an "independent review of the record [] to determine whether the state
21 court clearly erred in its application of controlling federal law," but must still defer to the
22 state court's decision. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (citing Delgado
23 v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000)).
24     The clearly established federal law regarding sufficiency of the evidence claims in the
25 criminal context is set forth in Jackson v. Virginia, 443 U.S. 307 (1979). Jackson claims face
26 a high bar in federal habeas proceedings. Coleman v. Johnson, 132 S.Ct. 2060, 2062
27
28     [4] Lodgment 19 is not numbered so the Court physically counted the pages and uses the appropriate page number.

(2012). In Jackson, the Court held that the Fourteenth Amendment's Clause is violated, and an applicant is entitled to habeas corpus relief, "if it is found that upon the evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. In making this determination, habeas courts must respect "the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004) (citing United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.1992)). "Although it might have been possible to draw a different inference from the evidence, [a federal habeas court is] required to resolve that conflict in favor of the prosecution." Ngo v. Giurbino, 651 F.3d 1112, 1114-15 (9th Cir. 2011); see also Coleman, 132 S.Ct. at 2062. (stating that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'") (quoting Cavazos v. Smith, 132 S.Ct. 2, 4 (2011) (per curiam)); and Jackson, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution"). Federal habeas courts also must analyze Jackson claims "with explicit reference to the substantive elements of the criminal offense as defined by state law." Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) (quoting Jackson, 443 U.S. at 324, n.16). When assessing the evidence presented at trial, a reviewing court must conduct a thorough review of the state court record. Jones v. Wood, 114 F.3d 1002, 1013 (9th Cir. 1997).

Here, Petitioner was convicted of aggravated kidnapping. This crime has the following elements:

1.  The defendant intended to commit rape;
2.  Acting with that intent, the defendant took, held, or detained another person by using force or by instilling a reasonable fear;
3.  Using that force or fear, the defendant moved the other person (or made the other person move) a substantial distance;
4.  The other person was moved or made to move a distance beyond that merely incidental to the commission of a rape; and
5.  The other person did not consent to the movement.

CALCRIM No. 1203. Petitioner only challenges the sufficiency of the evidence for the first element–the intent to commit rape. Pet. at 7-13.

A review of the record shows that the victim's testimony provided substantial evidence that Petitioner kidnapped the victim with the specific intent to rape her. The victim testified that she was outside a nightclub, after her friends had left in a cab, and a man in a car called to her. Lodgment 1 at 193-94. She looked inside the car, realized she did not know the man, and began to walk away. Id. at 194-95. The man, identified by the victim as the Petitioner, grabbed the victim by her throat and hair, threatened her, and pushed her into the car. Id. at 195-96. The victim testified that Petitioner punched her in the eye, pulled her down in the seat, and again threatened to kill her if she made any noise. Id. at 196-97. Petitioner held the victim's head down and repeatedly threatened her while he drove to a deserted wooded area. Id. at 197-200. Immediately after stopping the car, Petitioner used his weight to pin the victim down and rape her. Id. at 200-03. The victim fought against Petitioner but he repeatedly penetrated her vagina. Id. at 202-04. Petitioner then turned the victim over and sodomized her. Id. at 205-07. When Petitioner was done, he started to strangle the victim. Id. at 207. Throughout these events, Petitioner repeatedly threatened to kill the victim. Id. at 195-207. Petitioner then drove the victim to a new secluded location and again immediately and repeatedly raped her. Id. 207-211. When he finished, Petitioner drove away with the victim in the car and told her that he had to kill her because she had seen his face. Id. at 220-21. The victim pleaded for her life and finally, after stealing her jewelry and again threatening to kill her, Petitioner released the victim on

the side of a freeway. Id. at 221-25. The victim's testimony considered alone was sufficient to support the jury's verdict. People v. Young, 34 Cal.4th 1149, 1181 (2005) ("[T]estimony of a single witness is sufficient to support a conviction."); see also Lodgment 1 at 106, CALCRIM No. 301 (instructing the jury that the "testimony of only one witness can prove any fact.").

In this case, however, there was additional testimony that corroborated the victim's account of the crime and proved Petitioner's intent to rape. For example, Lani Lutar, the victim's roommate, testified that the victim arrived home later than expected and she was disheveled, hysterical, scared, and screaming. Lodgment 1 at 54-56. Ms. Lutar said that the victim told her that she had been forced into a car outside a nightclub and was driven to various locations around San Diego and raped and assaulted repeatedly. Id. at 57-60. Stephanie Grace, who also is a friend of the victim, testified that she saw the victim the morning after the rape and that the victim was badly bruised, had a swollen forehead, bald patches on her head where hair had been pulled out, a black eye, and bruised and swollen knuckles. Id. at 163-67. Ms. Grace also testified that the victim told her a man had grabbed her, forced her into a car, drove her around San Diego, and repeatedly assaulted and raped her. Id. at 166. Additionally, Claire Nelli, a registered nurse specializing in sexual assault forensic examinations, testified that she examined the victim on the date of the assault and rape and that the victim's injuries were consistent with non-consensual sex. Id. at 338, 348, 372-73. From this evidence, a jury reasonably could infer that Petitioner kidnapped the victim specifically with the intent to rape her because Petitioner dragged the victim into the car, used violent means to hold the victim in place, and immediately drove to a secluded location, where he repeatedly raped her, and then Petitioner repeated the crime at a second location. The victim's testimony points to no purpose for the kidnapping, other than rape, and the victim's testimony is corroborated by substantial evidence.

Accordingly, the Court finds that there was overwhelming evidence establishing every element of the charged crime of aggravated kidnapping, including the element of intent to rape. Jackson, 443 U.S. at 319 ("[T]he relevant question is whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). As a result, Petitioner has not demonstrated that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(a). Accordingly, this Court **RECOMMENDS** that Petitioner's first claim for relief be **DENIED**.

While Petitioner repeatedly denies in this Court and the California Supreme Court that he is challenging the jury instructions, the record indicates that the trial court improperly instructed the jury on the elements required for the crime of aggravated kidnapping. Specifically, the record shows, and Respondent admits, that the trial judge erred by not instructing the jury that the government had to prove beyond a reasonable doubt that Petitioner had an intent to rape at the time he kidnapped the victim. Lodgment 1 at 120; ECF No. 13 at 20-22. While this misstatement constitutes an instructional error, it does not warrant habeas relief. Initially, because Petitioner explicitly advised the California Supreme Court that he was not asserting an instructional violation, but rather only an insufficiency of the evidence claim, the instructional error is unexhausted. Second, an instructional error does not mandate federal habeas relief. Habeas relief is only appropriate where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, supra, (quoting Cupp, 414 U.S. at 147). Here, despite the fact that the trial court failed to properly instruct the jury on the elements of aggravated kidnapping - namely, that the defendant must have the specific intent to commit rape at the time of the kidnapping - there was overwhelming evidence, as discussed above, to support the jury's determination that Petitioner had the requisite intent and was guilty of aggravated kidnapping. Hence, even if Petitioner had exhausted this claim, he cannot show that the trial court's improper instruction violated his right to due process or that the state court's denial of his claim was contrary to clearly established federal law. See Pulido v. Chrones, 629 F.3d 1007, 1012 (9th

Cir. 2010) (explaining that habeas relief for an instructional error is appropriate only if, after reviewing the record as a whole, the Court determines that there was a substantial and injurious effect or influence on the verdict) (citing Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)).  Moreover, a review of the record indicates that the trial court stayed Petitioner's sentence for the aggravated kidnapping offense.[5]  See Lodgment 1 at 705.  Hence, any error pertaining to this offense was harmless.

## II.     Ex Post Facto Clause Violation

Petitioner claims that his prosecution for Counts 1-5 constituted an ex post facto violation of the applicable statute of limitations.  Pet. at 18-22, 35-38.  Petitioner acknowledges that the statute of limitations for the charged crimes was changed in 2005 from six years to ten years and he does not challenge the applicability of the ten year statute of limitations to his crimes.  Id.   Rather, Petitioner argues that the prosecution was required to allege facts in the criminal complaint showing that the extended statute of limitations was applicable to these crimes and that the failure to do so constituted an ex post facto violation.  Id. at 19-20.

Respondent argues that Petitioner cannot show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Answer at 22-23. Specifically, Respondent argues that according to Stogner v. California, 539 U.S. 607 (2003), a law enacted after the expiration of the applicable statute of limitations period is not ex post facto if, when the statute was enacted, the offense was not already time-barred.  Id. at 23.  Respondent further contends that because the statute of limitations was adjusted to ten years prior to the expiration of the original six year statute of limitations, Petitioner's prosecution did not violate the Ex Post Facto Clause.  Id.

Petitioner presented this claim to the California Supreme Court in a habeas corpus petition in the same manner as the appellate court. Lodgments 12 and 19. The petition was

---

[5] The jury found true special allegations as to Counts 1 and 4 that Petitioner kidnapped the victim during the course of the rape pursuant to Penal Code section 667.61. Lodgment 1 at 251. Because the special allegations involve the same criminal acts as those in the aggravated kidnapping offense in Count 6, and because California Penal Code section 654 prohibits multiple punishments for the same criminal act, the trial court stayed Petitioner's sentence as to Count 6. Id. at 275.

summarily denied without a statement of reasoning or citation of authority. Lodgment 20. The appellate court denied the claim in a reasoned opinion. Lodgment 13. The Court will therefore look through the silent denial by the state supreme court to the appellate court opinion. Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991). The appellate court stated:

> Section 801.1, added in 2004 and amended in 2005 and 2007, provides a special limitations period for various sex offenses. Section 801.1, subdivision (b) provides: "Notwithstanding any other limitation of time described in this chapter, if subdivision (a) does not apply [victim under age of 18], prosecution for a felony offense described in subdivision (c) of Section 290 shall be commenced within 10 years after the commission of the offense." Forcible rape and forcible sodomy are among the enumerated crimes in section 290, subdivision (c), and the prosecution of Wilson for the 1999 crimes commenced before the 10-year limitation expired. Section 801.1 "changed the statutory home" of the relevant 10-year statute of limitations in former section 803, subdivision (i)(1), which was effective January 1, 2001. (In re White (2008) 163 Cal.App.4th 1576, 1580-81.) Although the limitations period under earlier statutes was six years, the statutory amendments and enactments commencing in 2001 properly extended the period applicable to the felony sex offense for which Wilson was convicted and the prosecution was never time barred. (See 1 Witken & Epstein, Cal. Criminal Law (2010 supp.) Defenses, § 219, p. 203.)

Lodgment 13 at 1-2.

"[T]he Ex Post Facto Clause prohibits laws that retroactively increase the penalty for a crime." Moor v. Palmer, 603 F.3d 658, 663 (9th Cir. 2010) (citing Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995)). Thus, "[a] law violates the Ex Post Facto Clause if it is 1) retroactive - it applies to events occurring before its enactment; and 2) detrimental - it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Brown v. Palmateer, 379 F.3d 1089, 1093 (9th Cir. 2004) (citations and internal quotation marks omitted).

Laws extending the limitation period for prosecution of a crime, which are enacted after the previously-applicable limitation period has expired, violate the Ex Post Facto Clause of the Constitution. Stogner, 539 U.S. at 633-34. However, if such laws are enacted before the pre-existing limitation period has expired, the application of the new law to the previous offense does not violate the Ex Post Facto Clause because the original limitation period never expired. Renderos v. Ryan, 469 F.3d 788, 795 (9th Cir. 2006).

The crimes charged in Counts 1-5, forcible rape in violation of section 261(a)(2) and sodomy by use of force in violation of section 286(c)(2), were committed in 1999. Lodgment

1 at 14. In 1999, the applicable statute of limitations provided that the "prosecution for an offense punishable by imprisonment in the state prison for eight years or more...shall be commenced within six years after commission of the offense." Cal. Penal Code. § 800. Effective 2001, section 803(h) was amended to provide that:

> the limitations period for commencing prosecution for a felony offense described in subparagraph (A) of paragraph (2) of subdivision (a) of Section 290, where the limitations period set forth in Section 800 has not expired as of January 1, 2001, or the offense is committed on or after January 1, 2001, shall be 10 years from the commission of the offense.

Cal. Penal Code § 803(h). In 2002, section 803(h) was renumbered section 803(i) with the same substantive requirements. In 2005, section 801.1 established the same ten year limitations period for sex crimes except it eliminated the date requirements and changed the statutory home of the limitation away from section 803 stating:

> Notwithstanding any other limitation of time described in this chapter, prosecution for a felony offense described in subparagraph (A) of paragraph (2) of subdivision (a) of Section 290 shall be commenced within 10 years after commission of the offense.

Section 290, also known as the Sex Offender Registration Act, includes section 261(a)(2) (forcible rape) and section 286(c)(2) (sodomy by use of force).

When the crimes were committed on July 10, 1999, the six year statute of limitations set forth in section 800 governed so the prosecution was required to file charges by July 10, 2005. However, because the six year statute of limitations was extended to ten years in 2001, four years before the original statute of limitations would have lapsed, Petitioner's prosecution in 2007 was timely. See Renderos, 469 F.3d at 795 (explaining that "if such laws are enacted before the pre-existing limitation period has expired...the enactment does not violate the Ex Post Facto Clause.").

Petitioner's argument that California law requires the government to plead and prove the timeliness of the prosecution or the applicability of the longer statute is without merit. Initially, challenges to state law are not reviewable in a federal habeas proceeding. See Estelle, 502 U.S. at 68 (stating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law,

including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Second, the charging document did adequately allege the timeliness of the prosecution. The government filed a complaint in 2007 charging Petitioner with committing the six charged sex crimes in 1999. Because the complaint was filed three years before the ten year statute of limitations lapsed in 2009, the charges are both timely and appropriately alleged. See, Elrite v. Martel, 2011 WL 1087761 at *7 (E.D. Cal. March 4, 2011) (neither the Ex Post Facto Clause nor federal law set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000), were violated where the charging document alleged the time frame of the charged sex crimes and the charging document was filed with the applicable statute of limitations); Renderos, 469 F.3d at 796-97. Accordingly, the state court's denial of Petitioner's claim was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(a). Accordingly, this court **RECOMMENDS** Petitioner's second claim for relief be **DENIED**.

### III.  Ineffective Assistance of Counsel

Petitioner's third and fourth claims allege that both his trial and appellate counsel were ineffective. Pet. at 26-40. Respondent generally contends that Petitioner's ineffective assistance of counsel claims are meritless. Answer at 24.

To prevail on a claim of ineffective assistance of counsel in federal court, Petitioner must first establish that his trial counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687 (1984). "This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Judicial scrutiny of counsel's performance must be "highly deferential." Id. at 689. Second, he must show that counsel's deficient performance prejudiced the defense, such that the result of the proceeding would have been different absent counsel's errors. Id. at 687. On federal habeas review, "the question is not whether counsel's actions were reasonable, [but] whether there is any reasonable argument that counsel satisfied Strickland's deferential

standard." Harrington v. Richter, 131 S.Ct. 770, 788 (2011). The Court need not address the performance prong if the claim can be resolved on the ground of lack of sufficient prejudice. Strickland, 466 U.S. at 697.

The Strickland standard applies to both trial and appellate counsel. Smith v. Robbins, 528 U.S. 259, 285-88 (2000). However, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Id. at 288. Hence, to establish ineffective assistance by his appellate counsel, Petitioner must identify "a particular nonfrivolous issue" which was not presented to the appellate courts and show that it "was clearly stronger than issues that counsel did present." Id.

**A. Trial Counsel**

Petitioner claims that his appointed trial counsel was ineffective in violation of his constitutional rights under the Sixth Amendment. Pet at 40. Specifically, Petitioner claims that his counsel was ineffective by failing to 1) "file a motion in arrest of judgment on Count 6 and both One Strike sentencing allegations;" 2) ensure the verdict forms reflected the actual offense that he was being charged with as to Count 6; 3) file a motion challenging the trial court's jurisdiction with respect to the allegedly time-barred kidnapping offense and the "offense based special allegations;" and 4) object to the pronouncement of judgment and sentence as to all counts. Id. at 32-41.

Respondent contends that Petitioner has not exhausted subclaims 1, 2, and 4 in state court and is barred from raising these claims on federal habeas review. Answer at 24. Respondent further argues that subclaim 3 is procedurally barred, and that the state court's decision was not contrary to clearly established federal law. Id. Finally, with respect to all subclaims, Respondent argues that Petitioner has not "alleged, let alone proven, how any assumed error by counsel caused him prejudice." Id.

**1. Subclaims 1, 2, and 4**

This Court has reviewed the record and agrees with Respondent that Petitioner did not exhaust subclaims 1, 2, and 4 in state court. Exhaustion of a habeas petitioner's federal

claims requires that they have been "fairly presented" in each appropriate state court. See Baldwin v. Reese, 541 U.S. 27, 29 (2004). Petitioner presented subclaims 1 and 4 only to the California Court of Appeal in his initial habeas petition, but he abandoned these subclaims in his subsequent petitions.[6] Lodgment 8 at 8. Petitioner did not present subclaim 2 on direct appeal or in any of his state habeas petitions. Lodgment 2; Lodgment 10 at 13-15; Lodgment 12 at 31-36; Lodgment 14 at 39-44. Notwithstanding the fact that Petitioner failed to exhaust subclaims 1, 2, and 4, the Court will deny these subclaims on the merits because it is clear that Petitioner has "no colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005) (explaining that a federal habeas court may deny unexhausted claims on the merits only when it is perfectly clear that the claims do not raise even a colorable federal claim).

In subclaim 1, Petitioner faults his trial counsel for failing to file a motion in arrest of judgment[7] relating to the aggravated kidnapping offense in Count 6 and the special allegations. Pet. at 23. While Petitioner does not clearly state why his counsel should have filed the motion in arrest of judgment, it appears that it arises out of his argument that because there was no evidence of "intent to rape," the trial court reduced the charged crime from aggravated kidnapping to simple kidnapping. As discussed above, despite the trial court's failure to properly instruct the jury on the elements of aggravated kidnapping, the government presented overwhelming evidence to support the aggravated kidnapping charge. Moreover, there is no evidence to support Petitioner's theory that the trial court sua sponte reduced the charged crime to simple kidnapping. Because there was no basis to believe the crime had been reduced to simple kidnapping, it was not unreasonable for Petitioner's trial

---

[6] Petitioner mistakenly filed his initial habeas petition in the California Court of Appeal rather than the San Diego County Superior Court. Lodgment 8. This petition contained subclaims 1 and 4. The Court of Appeal consequently denied Petitioner's initial habeas petition without prejudice and directed him to refile in the San Diego County Superior Court. Lodgment 9. Petitioner did so but the petition he filed in the San Diego County Superior Court did not include subclaims 1 and 4. Lodgment 10.

[7] California Penal Code section 1185 provides that a criminal defendant may file a "motion in arrest of judgment" challenging a defective pleading or information. In a felony case, the effect of an order arresting judgment is to place the defendant in the same situation in which the defendant was immediately before the indictment was found or the information filed. See California Penal Code section 1187.

counsel to not file a motion in arrest of judgment and Petitioner cannot establish prejudice.

In subclaim 2, Petitioner alleges that his trial counsel failed to ensure the verdict forms reflected the actual offense that he was being charged with in Count 6. A review of the record, however, indicates that both the felony information filed by the government and the verdict form relating to Count 6 clearly set forth the crime of aggravated kidnapping. Lodgment 1 at 16 and 261. Because there was overwhelming evidence supporting the aggravated kidnapping charge and the verdict form mirrored the charging document, it was not unreasonable for counsel not to seek to have the verdict form changed. Even assuming Petitioner's trial counsel was deficient, Petitioner was not prejudiced because the trial court stayed his sentence on Count 6.

In subclaim 4, Petitioner alleges that his trial counsel failed to "object to the pronouncement of judgment and sentence as to all counts." Pet. at 23. Petitioner provides no explanation for this claim, and fails to identify any specific prejudice resulting from his counsel's failure to object to the pronouncement of judgment. Petitioner merely states that "as a result of counsel's deficient performance, Petitioner was severely prejudiced by being unlawfully convicted and sentenced on all counts." Pet. at 23. Vague, unsupported claims do not warrant habeas relief. James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994). Moreover, as discussed above, there was overwhelming evidence establishing Petitioner's guilt and supporting the resulting sentence. Consequently, this Court finds that Petitioner cannot satisfy either prong set forth in Strickland and **RECOMMENDS** that subclaims 1, 2, and 4 be **DENIED**.

### 2. Subclaim 3

Subclaim 3 alleges that Petitioner's trial counsel failed to "file a motion challenging the trial court's jurisdiction with respect to the allegedly time-barred kidnapping offense and the 'offense based special allegations.'" Pet at 32-41. Petitioner presented this subclaim to the California Supreme Court in a habeas corpus petition in the same manner as the California Court of Appeal. Lodgments 19 and 12. The petition was summarily denied without a statement of reasoning or citation of authority. Lodgment 7. The appellate court stated:

> Because Wilson's prosecution was timely, his claim of ineffective assistance of trial and appellate counsel for failing to raise the statute of limitations defense is without merit. We do not address his contentions as to the [S]uperior [C]ourt order denying his petition.

Lodgment 13 at 60-61.

As discussed above, Petitioner's prosecution was not time barred so any failure of trial counsel to file a motion in regards to the statute of limitations was harmless and did not fall below an objective standard of reasonableness. Strickland, 466 U.S. at 667. Moreover, Petitioner fails to make any showing that he was prejudiced by his trial counsel's alleged deficient performance. Accordingly, this Court finds that the state court's denial of Petitioner's claim was not "contrary to, or an unreasonable application of, clearly established federal law," and therefore **RECOMMENDS** that subclaim 3 be **DENIED**.

**B. Appellate Counsel**

Petitioner argues that the important constitutional issues raised in his federal petition were not raised on direct appeal and appellate counsel's failure to do so constitutes a "deficient performance unreasonable under prevailing professional norms." Pet. at 26. Petitioner further argues that he was prejudiced by appellate counsel's performance because he is prevented from raising various valid constitutional issues in a habeas proceeding. Id.

Respondent argues that Petitioner's claim should be denied because it is "undeveloped and conclusory." Answer at 27. Additionally, both lower courts rejected Petitioner's claim on the merits. Id. Lastly, Respondent argues that the claim is procedurally barred because the San Diego County Superior Court found it to be untimely. Id. at 27-28.

While the California Supreme Court summarily denied Petitioner's claims, the California Court of Appeal found that since Petitioner's prosecution was timely under the relevant statute of limitations, his ineffective assistance of appellate counsel claim for failing to raise any statute of limitations defense is without merit. See supra at 18; Lodgment 13 at 60-61.

Here, Petitioner argues only that appellate counsel did not select "important Constitutional issues" raised in his federal petition and does not allege any specific facts or legal issues that warrant habeas relief. Pet. at 26. A review of the record shows that Petitioner's appellate counsel, Gregory Marshall, filed merits briefs in both the California

Court of Appeal and the California Supreme Court, arguing that the trial court's admission of Claire Nelli's expert testimony that the victim's injuries were a result of non-consensual sex was reversible error. Lodgments 2 and 6. No other issues were raised on direct appeal. Id. As discussed throughout this Report and Recommendation, the legal issues asserted in Petitioner's federal petition are without merit. Accordingly, Petitioner has failed to identify a nonfrivolous issue which his appellate counsel did not present to the appellate courts, and cannot satisfy his burden under Strickland. Consequently, the state court's denial of Petitioner's ineffective assistance of appellate counsel claim was not contrary to, or an unreasonable application of, clearly established federal law. The Court **RECOMMENDS** that Petitioner's fourth claim for relief be **DENIED**.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order approving and adopting this Report and Recommendation denying the Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **February 27, 2013**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 13, 2013**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED: February 6, 2013

BARBARA L. MAJOR
United States Magistrate Judge